**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

GALEN PENDERGRASS,

               Plaintiff,

v.

WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY,

               Defendant.

Civil Action No. 19-3331 (EGS)

**MEMORANDUM OPINION**

## I.  Introduction

Plaintiff Galen Pendergrass ("Mr. Pendergrass" or "Plaintiff"), proceeding pro se, brings this action against Defendant Washington Metropolitan Area Transit Authority ("WMATA") under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401, *et seq.*; the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*; the Federal Transit Act ("FTA"), 49 U.S.C. § 5301, *et seq.*; and the WMATA Background Screening Policy/Instruction (PI) 7.2.3/2 regarding Criminal Background Checks ("CBC Policy"). Mr. Pendergrass alleges that by denying him employment, WMATA discriminated against him in its hiring practices based on his race and retaliated against him for his involvement in a prior

1

lawsuit against WMATA regarding its CBC Policy. *See* Compl., ECF No. 1 at 1-2 ¶¶ 1-2, 13-14 ¶¶ 29-34.[1] Pending before the Court is WMATA's partial Motion to Dismiss, in which it moves to dismiss all but Mr. Pendergrass' Title VII claims for lack of jurisdiction and failure to state a claim. *See* Def.'s Mot., ECF No. 7. Upon careful consideration of Mr. Pendergrass' Complaint, the pending motion, the opposition, the reply thereto, and the applicable law, the Court **GRANTS** WMATA's Motion to Dismiss.

## II.  Background

### A. WMATA's Criminal Background Checks Policy

WMATA, the primary public transit agency for the Washington, D.C. metropolitan area, was created by a compact enacted by Congress and to which the District of Columbia, the Commonwealth of Virginia, and the State of Maryland are signatories. *Jones v. WMATA*, 205 F.3d 428, 432 (D.C. Cir. 2000); *see also* D.C. CODE ANN. § 9-1107.01 (codifying WMATA's interstate compact for D.C.). In signing the interstate compact, "Maryland, Virginia, and the District of Columbia conferred upon WMATA their respective sovereign immunities." *Beebe v. WMATA*, 129 F.3d 1283, 1287 (D.C. Cir. 1997). "The Compact confers broad powers on WMATA to '[c]reate and abolish offices, employments and

---

[1] When citing electronic filings throughout this Memorandum Opinion, the Court cites to the ECF header page number, not the original page number of the filed document.

positions . . . [and] provide for the qualification, appointment, [and] removal . . . of its . . . employees, . . . [and] [e]stablish, in its discretion, a personnel system based on merit and fitness.'" *Id.* (quoting D.C. CODE ANN. § 9-1107.01(12)(g)-(h)). Today, WMATA is "[r]esponsible for creating a coordinated public transportation system for the region," and "operates an extensive Metrobus and Metrorail system running throughout" D.C., Maryland, and Virginia. *Id.* at 1285-86.

WMATA has a history of litigation over its CBC Policy, notably a large class action lawsuit filed in 2014, *see* Compl., ECF No. 1 at 6 ¶ 3; alleging that the 2011 version of its CBC Policy (the "2011 Policy") "had a disparate impact on African Americans in violation of Title VII . . . , required rigid application of its screening standards, and did not provide for individualized assessment of disqualified applicants[,]" Def.'s Mot. for Recons. of Consolidation Order, ECF No. 19 at 2; *see generally Little, et al. v. WMATA*, Case No. 14-1289 (RMC) (the "*Little* Class Action"). While the *Little* Class Action was pending, WMATA adopted and agreed to maintain a new CBC Policy replacing the 2011 Policy, which became effective on July 10, 2017 (the "2017 Policy"). Def.'s Mot. for Recons. of Consolidation Order, ECF No. 19 at 2-3. The 2017 Policy contains a new set of criteria for determining "what types of criminal offenses disqualif[y] an applicant for employment in a

particular position," *id.* at 3; and includes a process providing "for individualized assessments after an applicant fails the background check rather than presumptive disqualification" based on an applicant's prior conviction(s), *Little v. WMATA*, 313 F. Supp. 3d 27, 33 (D.D.C. 2018). Specifically, if applicants believe the adverse CBC information is "not job related and consistent with business necessity," they can provide additional information or documentation to explain "any mitigating factors or extenuating circumstances for consideration by WMATA." Pl.'s Resp., ECF No. 9 at 4. Following WMATA's adoption of the 2017 Policy, the *Little* Class Action settled in 2018, allowing WMATA to proceed forward with operations under its updated CBC Policy. *See Little*, 313 F. Supp. 3d at 39; Compl., ECF No. 1 at 6 ¶ 3.

### B. Factual Background

The following facts reflect the allegations in the Complaint and the documents incorporated by reference therein,[2]

---

[2] "In determining whether a complaint fails to state a claim, [the Court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). Here, Mr. Pendergrass has directly incorporated various documents into the body of his Complaint, which the Court considers for the purposes of this motion. *See* Compl., ECF No. 1 at 3-5, 8-9, 19. However, the Complaint also references several exhibits, described as Exhibits A to H, *see id.* at 10-11; but the Court cannot consider them because there are no exhibits actually appended to Mr. Pendergrass' Complaint. Instead, in opposing WMATA's Motion to Dismiss, Mr. Pendergrass has appended different exhibits to his response, *see* Exs. 1-14,

which the Court assumes are true for the purposes of deciding
this motion and construes in Mr. Pendergrass' favor. *See Baird
v. Gotbaum*, 792 F.3d 166, 169 n.2 (D.C. Cir. 2015).

Mr. Pendergrass, an African American male, applied for a
position as a Bus Operator with WMATA in 2013. Compl., ECF No. 1
at 6 ¶ 3. He was given a contingent offer of employment that was
later rescinded following a criminal background check revealing
a "non-violent victimless firearm charge" that occurred in 2000.
*Id.* at 6 ¶ 3, 17 ¶ 47; Joint Status Report, ECF No. 18 at 6. In
2015 in this District Court (the "2015 Case"), Mr. Pendergrass
sued WMATA challenging its 2011 Policy and his disqualification
from employment because of his prior criminal conviction.
Compl., ECF No. 1 at 6 ¶ 3; *see* Compl., *Pendergrass v. WMATA*,
No. 15-98 (RMC/EGS) (D.D.C. Jan. 21, 2015), ECF No. 1 at 3-4 ¶
6. This case was later consolidated with the *Little* Class
Action, during which Mr. Pendergrass "gave crucial testimony and
evidence on multiple occasions that led to the class action
certification." Compl., ECF No. 1 at 6 ¶ 3, 13 ¶ 29; *see also
Little*, 313 F. Supp. 3d at 33 ("The Court heard and considered

---

ECF No. 9-1 at 1-52; but WMATA argues that they "should not be
considered for purposes of this motion," Def.'s Reply, ECF No.
11 at 2 n.2. The Court agrees, as it "generally cannot consider
matters beyond the pleadings at the motion-to-dismiss stage,"
*Patrick v. Dist. of Columbia*, 126 F. Supp. 3d 132, 135 (D.D.C.
2015); "without converting the motion to dismiss into one for
summary judgment," *Holston v. Yellen*, No. 20-3533 (EGS), 2022 WL
4355289, at *5 (D.D.C. Sept. 20, 2022).

argument from . . . the following individuals who elected to appear to voice their support for, or objection to, the Settlement: Galen Pendergrass . . . . "). Although the *Little Class Action* settled in 2018, Mr. Pendergrass elected to opt out of the class, thereby forgoing any monetary settlement he would have received. Def.'s Mot. for Recons. of Consolidation Order, ECF No. 19 at 4; Compl., ECF No. 1 at 6 ¶ 3.

Instead, Mr. Pendergrass reapplied for employment with WMATA as a Bus Operator in the fall of 2017, after the 2017 Policy had gone into effect. Compl., ECF No. 1 at 6 ¶ 3, 14-15 ¶¶ 36-38. In October 2017, he was invited for an interview, during which he received an offer of employment contingent on his successful completion of a background check by First Choice Background Screening ("FCBS"). *Id.* at 7 ¶ 8, 15 ¶ 40. On November 1, 2017, Mr. Pendergrass was notified that his employment offer had been rescinded due to his prior conviction for a non-violent weapons offense, which he alleges "is the only non-violent offense calling for a life time exclusion to employment as a Bus Operator in WMATA in the 2017 Policy." *Id.* at 6 ¶ 3, 15 ¶ 40. On November 6, 2017, Mr. Pendergrass contacted WMATA by email to ask for instructions on how to request an individualized assessment of the denial of his employment, per the 2017 CBC Policy, and on November 20, 2017, he received an individualized assessment packet from FCBS with

instructions on how to complete the request, including that he had seven business days from receipt of the package to submit his request. *Id.* at 7 ¶ 8, 15 ¶ 40. On November 28, 2017, WMATA emailed Mr. Pendergrass to inform him that his request for individualized assessment had been denied. *Id.* at 15 ¶ 41. Mr. Pendergrass alleges that he spoke on the phone with a WMATA representative, Ms. LaShawn Lott ("Ms. Lott"), that same day, who told him to ignore this email denial, as it was based on his November 6, 2017 email and "not on his actual individual assessment request which [he] had not yet submitted." *Id.* ¶¶ 41-42. Together, Mr. Pendergrass and Ms. Lott determined that since he had received the individualized assessment package on November 20, 2017 and the Thanksgiving holiday was upcoming, he had until November 29, 2017 to file his request. *Id.* at 16 ¶ 43.

Per this deadline, Mr. Pendergrass submitted his request for an individualized assessment on November 29, 2017 via email and mail through the U.S. Postal Service. *Id.* at 7 ¶ 9, 16 ¶ 43. His request consisted of "approximately 50 pages of documents that showed why he should not be permanently excluded" from being hired as a Bus Operator with WMATA based on his prior conviction. *Id.* at 7 ¶ 9. Ms. Lott called Mr. Pendergrass on December 5, 2017 to inform him that his request had been received and would be answered. *Id.* at 7 ¶ 9, 16 ¶ 43. Although the CBC Policy states that requests for review are to be

completed within thirty days from the date the Individualized Assessment Panel receives the request, *id.* at 10 ¶ 11; WMATA did not respond to Mr. Pendergrass' request until May 9, 2018, *id.* at 13 ¶ 32; at which time it denied his request and deemed him ineligible for employment, *id.* at 16 ¶ 44. Mr. Pendergrass alleges that WMATA "intentionally waited" until after the completion of a fairness hearing approving the settlement in the *Little* Class Action on April 18, 2018 "to answer and deny" his request "just 21 days later." *Id.* By that time, Mr. Pendergrass had filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") on December 4, 2017 and filed suit again in this district on March 7, 2018 (the "2018 Case") due to the events arising out of his second attempt at employment with WMATA. *Id.* at 10 ¶¶ 12-13, 16 ¶ 44; *see* Compl., *Pendergrass v. WMATA*, No. 18-622 (RMC) (D.D.C. Mar. 7, 2018), ECF No. 1 at 1-3.

Mr. Pendergrass alleges that WMATA's CBC Policy "has a disparate impact on African-American candidates due to the historically higher rate of criminal convictions of African Americans." *Pendergrass v. WMATA*, No. 18-622 (RMC), 2018 WL 4938578, at *1 (D.D.C. Oct. 11, 2018), *appeal dismissed* No. 18-7166, 2019 WL 667720 (D.C. Cir. Jan. 31, 2019); *see* Compl., ECF No. 1 at 1-6 ¶¶ 1-5, 10 ¶ 12, 16-18 ¶¶ 46-50 ("WMATA's [CBC] Policy has a discriminatory effect on African Americans."). In addition, Mr. Pendergrass alleges that since "he was the only

person who ever appeared in court and gave testimony in the
*Little* suit that he was intentionally singled out for
retaliation by WMATA and banned from employment." Compl., ECF
No. 1 at 6 ¶ 3. He claims that his non-violent conviction "was
the only nonviolent conviction that called for a lifetime ban of
employment in the entire Background Screening Policy for the Bus
Operator Position [he] applied" for, and that WMATA
intentionally listed his prior conviction as a disqualifying
offense, despite it being "unrelated to the job" and
inconsistent "with business necessity," in retaliation for him
being "the most outspoken opponent to WMATA's previous" CBC
Policy in the *Little* Class Action. *Id.* at 13 ¶ 30, 14 ¶ 34.
Although Mr. Pendergrass claims that WMATA "openly acknowledges"
his prior offense as "a non-violent offense[,]" it has deemed
him "a lifetime threat to the vulnerable population consisting
of the elderly, children, disabled, etc." despite being "well-
qualified to work for WMATA." *Id.* at 1-2 ¶ 1, 13 ¶ 29, 16 ¶ 45.

### C. Procedural Background

On December 4, 2017, Mr. Pendergrass filed a Charge of
Discrimination with the EEOC based on the revocation of his
second contingent offer of employment with WMATA and challenging
the CBC Policy as discriminatory. *Id.* at 10 ¶ 12. That same day,
the EEOC issued him a Notice of Right to Sue Letter, which he
received on December 7, 2017. *Id.* Mr. Pendergrass then filed his

second suit pertaining to WMATA's CBC Policy in this district on March 7, 2018, alleging claims under Title VII, the DCHRA, the FCRA, and WMATA's CBC Policy 7.2.3/2. *Pendergrass*, 2018 WL 4938578, at *2. WMATA moved to dismiss all of those claims except those arising under Title VII, and another judge from this Court presiding over the case granted WMATA's partial motion to dismiss, thus allowing Mr. Pendergrass' Title VII claims in the 2018 Case to proceed. *Id.* at *2, *5. However, on February 8, 2019, this District Court dismissed Mr. Pendergrass' 2018 complaint without prejudice and remanded his claims back to the EEOC because the EEOC had prematurely issued his right-to-sue letter and Mr. Pendergrass had filed suit only 93 days after filing his EEOC charge, which was 87 days short of the requisite 180-day waiting period to file suit in federal court after filing a charge with the EEOC. Order, *Pendergrass v. WMATA*, No. 18-622 (RMC) (D.D.C. Feb. 8, 2019), ECF No. 28 at 1–3; *see also Martini v. Fed. Nat'l Mortg. Ass'n*, 178 F.3d 1336, 1347-48 (D.C. Cir. 1999) (finding that Title VII requires plaintiffs to wait at least 180 days "after filing charges with the EEOC before they may sue in federal court[,]" even if the EEOC provided an early right-to-sue letter prior to the expiration of the 180-day period); 42 U.S.C. 2000e-5(f)(1). This District Court stated that Mr. Pendergrass could file a new complaint "only after the [EEOC] ha[d] attempted to resolve his charge for an additional

177 days[.]" Order, *Pendergrass v. WMATA*, No. 18-622 (RMC) (D.D.C. Feb. 8, 2019), ECF No. 28 at 2.

Following the dismissal of his 2018 Case, Mr. Pendergrass visited the EEOC in Washington, D.C. on February 25, 2019 to inform it that his case had been remanded back to the EEOC for further consideration. Compl., ECF No. 1 at 11 ¶ 15. The EEOC instructed him to provide a copy of the court order, which he did on February 27, 2019. *Id.* ¶¶ 15-16. On March 21, 2019, he received a letter from the EEOC stating that it would not reopen the investigation of his Charge of Discrimination. *Id.* ¶ 17. Several weeks later, on April 19, 2019, Mr. Pendergrass returned to the EEOC to submit an appeal letter. *Id.* ¶ 18. Then, on August 7, 2019, the 180-day waiting period elapsed from the February 8, 2019 dismissal of his 2018 Case, and several months later, on October 2, 2019, Mr. Pendergrass submitted a request to the EEOC for a renewed right-to-sue letter, an inquiry to which the EEOC has not responded. *Id.* ¶¶ 19-20. Mr. Pendergrass alleges that all "prerequisites to" filing this suit "have been fulfilled[,]" *id.* ¶ 21; and on November 5, 2019, he filed the instant action asserting claims under Title VII, the DCHRA, the FCRA, the FTA, and WMATA's CBC Policy 7.2.3/2, *see* Compl., ECF No. 1 at 1, 20-24. He seeks declaratory and injunctive relief, as well as remedial relief and damages to compensate him for "the loss he has suffered as a result of WMATA's discriminatory

conduct[,]" and any additional relief the Court deems proper.
*Id.* at 24-25.

On January 13, 2020, WMATA moved, pursuant to Federal Rule
of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss all of Mr.
Pendergrass' claims except for those arising under Title VII.
*See* Def.'s Mot., ECF No. 7 at 1-3; Def.'s Reply, ECF No. 11 at 1
(moving for dismissal of Mr. Pendergrass' claims based on
"rights secured by" the FCRA, DCHRA, FTA, and WMATA's CBC
Policy). Mr. Pendergrass filed his opposition on February 4,
2020, *see* Pl.'s Resp., ECF No. 9 at 1; and WMATA filed its reply
on February 19, 2020, *see* Def.'s Reply, ECF No. 11 at 1. After
briefing was complete on WMATA's partial Motion to Dismiss, the
Court consolidated this case with Mr. Pendergrass' pending 2015
Case, No. 15-98 (EGS), and referred the consolidated cases to
the District Court's mediation program, thereby staying
proceedings. Min. Order (Nov. 19, 2021); Consolidation Order
(Nov. 30, 2021). After an unsuccessful attempt at mediation, *see*
Joint Status Report of Mediation, ECF No. 15 at 1; WMATA filed a
motion for reconsideration, requesting that "the Court rescind
[its] prior consolidation order and enter a new order directing
that Plaintiff's [2015 and 2019] cases be tried separately[,]"
Def.'s Mot. for Recons. of Consolidation Order, ECF No. 19 at 2.
On August 3, 2023, the Court granted this motion for good cause
shown and lack of opposition by Mr. Pendergrass, and it vacated

its November 19, 2021 Minute Order, thus reopening Case No. 15-98 (EGS) so that the 2015 Case can be separately litigated from the instant 2019 action. *See* Min. Order (Aug. 3, 2023).

WMATA's Motion to Dismiss in Part is now ripe and ready for the Court's adjudication.

### III. Standard of Review

#### A. Rule 12(b)(1)—Subject-Matter Jurisdiction

"A federal district court may only hear a claim over which [it] has subject-matter jurisdiction; therefore, a Rule 12(b)(1) motion for dismissal is a threshold challenge to a court's jurisdiction." *Gregorio v. Hoover*, 238 F. Supp. 3d 37, 44 (D.D.C. 2017) (citation omitted). To survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing that the court has jurisdiction by a preponderance of the evidence. *Moran v. U.S. Capitol Police Bd.*, 820 F. Supp. 2d 48, 53 (D.D.C. 2011) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). "Because Rule 12(b)(1) concerns a court's ability to hear a particular claim, the court must scrutinize the plaintiff's allegations more closely when considering a motion to dismiss pursuant to Rule 12(b)(1) than it would under a motion to dismiss pursuant to Rule 12(b)(6)." *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 65 (D.D.C. 2011). In so doing, the court must accept as true all of the factual allegations in the complaint and draw all reasonable

inferences in the plaintiff's favor, but the court need not "accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001).

In reviewing a motion to dismiss pursuant to Rule 12(b)(1), "the court need not limit itself to the allegations of the complaint." *Id.* (citing *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64, 107 S. Ct. 2246, 96 L. Ed. 2d 51 (1987)). Rather, the court "may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case." *Scolaro v. Dist. of Columbia Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); *see also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). "Faced with motions to dismiss under Rule 12(b)(1) and Rule 12(b)(6), a court should first consider the Rule 12(b)(1) motion because [o]nce a court determines that it lacks subject matter jurisdiction, it can proceed no further." *Ctr. for Biological Diversity v. Jackson*, 815 F. Supp. 2d 85, 90 (D.D.C. 2011) (citations and internal quotation marks omitted).

### B. Rule 12(b)(6)—Failure to State a Claim

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir.

2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation and internal quotation marks omitted).

Despite this liberal pleading standard, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d. 868 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the facts pled in the complaint allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The standard does not amount to a "probability requirement," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"[W]hen ruling on a defendant's motion to dismiss [pursuant to Rule 12(b)(6)], a judge must accept as true all of the factual allegations contained in the complaint." *Atherton v. Dist. of Columbia Off. of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (citation omitted); and the court must give the plaintiff "the benefit of all inferences that can be derived from the facts alleged[,]" *Kowal v. MCI Commc'ns Corp.*, 16 F.3d

15

1271, 1276 (D.C. Cir. 1994). Further, "[a] pro se complaint is entitled to liberal construction." *Washington v. Geren*, 675 F. Supp. 2d 26, 31 (D.D.C. 2009) (citation omitted). However, the court may not accept as true "the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in the U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014); *see also Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) ("[Courts] are not bound to accept as true a legal conclusion couched as a factual allegation.").

## IV.  Analysis

WMATA advances four arguments for dismissal under Rules 12(b)(1) and 12(b)(6). *See* Def.'s Mem., ECF No. 7-1 at 2-7. First, WMATA argues that its sovereign immunity under the Eleventh Amendment to the U.S. Constitution mandates dismissal of Mr. Pendergrass' FCRA claims. *See id.* at 3-4. Second, WMATA argues that its status as an "interstate compact agency" requires dismissal of Mr. Pendergrass' DCHRA claims. *See id.* at 4-6. Third, WMATA contends that Mr. Pendergrass' claims under the FTA are "deficient as a matter of law" because the FTA does not contain a private right of action. *See id.* at 6-7. Finally, "[t]o the extent Plaintiff has asserted a claim based on the CBC Policy itself," WMATA argues that such a claim "fails to state a claim and/or is barred by WMATA's Eleventh Amendment immunity."

Def.'s Mot., ECF No. 7 at 2 ¶ 4. Thus, WMATA contends that only Mr. Pendergrass' Title VII claims should proceed. *Id.* at 1, 3 ¶ 6; Def.'s Mem., ECF No. 7-1 at 7-8.

WMATA further argues that "[t]his lawsuit reasserts, in a re-packaged format, the same challenge to [its] rejection of Plaintiff's 2017 application for employment that was initially the subject of his complaint in" the 2018 Case. Def.'s Mem., ECF No. 7-1 at 1. WMATA alleges that Mr. Pendergrass' Complaint in the instant case makes claims "just as he asserted in the 2018 Case," with the addition of a new claim under the FTA. *Id.* at 1-2. In doing so, WMATA claims that Mr. Pendergrass has "blatantly disregard[ed] the Court's prior ruling in the 2018 Case" dismissing his claims under the FCRA, DCHRA, and 2017 CBC Policy.[3] *Id.* at 2. The Court therefore addresses each of WMATA's four arguments in turn and in close reference to this District Court's prior 2018 decision. *See generally Pendergrass v. WMATA*, No. 18-622 (RMC), 2018 WL 4938578 (D.D.C. Oct. 11, 2018).

Before proceeding to the merits of those claims, the Court notes that, as was the case in his 2018 Case, "Mr. Pendergrass does not specifically oppose any of the arguments raised by WMATA in its motion, but instead attempts to raise [new] claims

---

[3] Mr. Pendergrass appears to acknowledge that he has "re-asserted" the same claims previously denied in the 2018 Case but contends that he has done so to "preserve[ the issues] for appeal[.]" Pl.'s Resp., ECF No. 9 at 2.

under the Federal Tort Claims Act [("FTCA"),]" *id.* at *3; *see* Pl.'s Resp., ECF No. 9 at 7-9; in addition to breach of contract and negligence tort claims based on WMATA's alleged failure to follow the CBC Policy, *see* Pl.'s Resp., ECF No. 9-11; Def.'s Reply, ECF No. 11 at 1 ("Plaintiff does not specifically address the merits of WMATA's arguments for dismissal of his FCRA, [FTA], and DCHRA claims. Instead, although not among the six specifically denominated counts asserted in his Complaint, Plaintiff appears to contend that he can pursue a tort and/or contract claim . . . ."). Accordingly, "Mr. Pendergrass has waived his objections to the motion to dismiss [with regard to] his claims under the [FCRA], DCHRA, and any 'arising under' WMATA's [CBC] Policy by failing to contest it[.]" *Pendergrass*, 2018 WL 4938578 at *3; *see also Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004). Nonetheless, because Mr. Pendergrass is representing himself pro se without the benefit of counsel, *see* Min. Order (Feb. 9, 2023), the Court briefly addresses WMATA's arguments concerning each claim, *see, e.g., Ning Ye v. Holder*, 644 F. Supp. 2d 112, 116 (D.D.C. 2009)

(affording greater latitude to pro se plaintiffs than those with counsel or who are themselves practicing attorneys).

### A. Mr. Pendergrass' Claims Under the Fair Credit Reporting Act Must Be Dismissed Based on WMATA's Sovereign Immunity Under the Eleventh Amendment

WMATA first argues, just as it did in moving to dismiss Plaintiff's 2018 complaint, that Mr. Pendergrass' claims under the FCRA must be dismissed because WMATA is immune from suit under the Eleventh Amendment. *Compare* Def.'s Mem., ECF No. 7-1 at 3-4, *with Pendergrass*, 2018 WL 4938578, at *3. WMATA was created by a congressionally authorized interstate compact between D.C., Maryland, and Virginia, *Jones*, 205 F.3d at 432; and in signing the compact, these three jurisdictions "conferred upon WMATA their respective sovereign immunities[,]" *Beebe*, 129 F.3d at 1287. Therefore, WMATA can only be held liable in a civil action "if it has [voluntarily] waived its immunity or Congress has abrogated the immunity of the States (and therefore WMATA), with respect to the federal law raised in the Complaint." *Pendergrass*, 2018 WL 4938578, at *3; *see Taylor v. WMATA*, 109 F. Supp. 2d 11, 13-14 n.4 (D.D.C. 2000).

First, in regard to waiver of sovereign immunity, section 80 of the WMATA Compact "waives this immunity for torts 'committed in the conduct of any proprietary function,' while retaining immunity for torts committed by its agents 'in the performance of a governmental function.'" *Beebe*, 129 F.3d at

1287 (quoting D.C. CODE ANN. § 9-1107.01(80)). The Court concludes, as it did in Mr. Pendergrass' 2018 Case, "that this waiver of immunity does not waive immunity against claims under the Fair Credit Reporting Act." *Pendergrass*, 2018 WL 4938578, at *3; *see* Def.'s Mem., ECF No. 7-1 at 4 ("WMATA [has not] voluntarily waived immunity to claims arising under the FCRA."). Second, the Court concludes, again as in the 2018 Case, "that Congress has not abrogated the States' immunity to claims under the FCRA[.]" *Pendergrass*, 2018 WL 4938578, at *3; *see also Betts v. Virginia*, No. 3:06-cv-753, 2007 WL 515406, at *3 (E.D. Va. Feb. 2, 2007) ("[T]here is no indication that Congress abrogated the States' Eleventh Amendment immunity when it enacted the FCRA."); *Alexander v. Dist. Ct. of Md. for Charles Cnty.*, No. 2007-1647, 2008 WL 6124449, at *7 n.9 (D. Md. Mar. 20, 2008) (same conclusion). Given these two conclusions, this District Court concluded in the 2018 Case that "[b]ecause WMATA has not waived its immunity and Congress has not abrogated the States' immunity," WMATA is immune from FCRA claims and thus dismissed Mr. Pendergrass' claims under that Act. *Pendergrass*, 2018 WL 4938578, at *3. WMATA argues, and the Court agrees, "[t]hat ruling and reasoning applies equally to the present case" and compels dismissal of Mr. Pendergrass' present FCRA claims. Def.'s Mem., ECF No. 7-1 at 4.

### B. Mr. Pendergrass' Claims Under the District of Columbia Human Rights Act Must Be Dismissed Because WMATA's Status as an Interstate Compact Agency Makes It Not Subject to that Act

Secondly, WMATA argues, as it did in the 2018 Case, that Mr. Pendergrass' DCHRA claims must be dismissed because as an entity established and governed by an interstate compact, WMATA "is not susceptible to the individual laws of the signatory jurisdictions unless all signatories and Congress agree." *Compare* Def.'s Mem., ECF No. 7-1 at 4-5, *with Pendergrass*, 2018 WL 4938578, at *4. It is settled that "pursuant to the WMATA Compact, one signatory may not impose its legislative enactment upon the entity created by it without the express consent of the other signatories and of the Congress of the United States." *Lucero-Nelson v. WMATA*, 1 F. Supp. 2d 1, 7 (D.D.C. 1998); *see also C.T. Hellmuth & Assocs., Inc. v. WMATA*, 414 F. Supp. 408, 409 (D. Md. 1976) ("[O]ne party [to an interstate compact] may not enact legislation which would impose burdens upon the compact absence the concurrence of the other signatories."). "Therefore, for WMATA to be subject to the requirements of the DCHRA, Maryland, Virginia, and Congress would have to give express permission under the Compact." *Pendergrass*, 2018 WL 4938578, at *4. However, "Mr. Pendergrass does not allege that Virginia and Maryland—or the Congress—have consented to the application of the DCHRA to WMATA," nor has WMATA alleged that

21

it has so consented. *Id.* And caselaw indicates that "[i]t is well-established that WMATA is not subject to the DCHRA" as "an interstate compact agency and instrumentality of three separate jurisdictions." *Taylor*, 109 F. Supp. 2d at 18; *see also Lucero-Nelson*, 1 F. Supp. 2d at 7 ("There is ample precedent holding that WMATA is not subject to the [DCHRA.]"). Therefore, the Court concludes, as did this District Court in 2018, that "WMATA is not subject to the DCHRA[,]" and it dismisses Plaintiff's claims under that Act. *Pendergrass*, 2018 WL 4938578, at *4.

### C. Mr. Pendergrass' Claims Under the Federal Transit Act Must Be Dismissed Because That Act Does Not Create a Private Right of Action

Thirdly, WMATA argues that Mr. Pendergrass' claims under the FTA[4] must fail "as a matter of law" because the FTA does not grant a private right of action to enforce its nondiscrimination provisions. *See* Def.'s Mem., ECF No. 7-1 at 6-7. Although Mr. Pendergrass did not raise an FTA claim in the 2018 Case, he still fails in the instant action to "address the caselaw and arguments presented by WMATA demonstrating [that] there is no private right of action under" that Act. Def.'s Reply, ECF No. 11 at 3. For example, WMATA points to another federal district

---

[4] Mr. Pendergrass' Complaint mistakenly raises discrimination claims on the basis of race under 49 U.S.C. § 5333(b), which discusses labor standards under the FTA; however, the nondiscrimination section of that Act is 49 U.S.C. § 5332. *See* Compl., ECF No. 1 at 23-24 (Count VI).

court's opinion assessing the nondiscrimination provisions in 49 U.S.C. § 5332 of the FTA and its conclusion that no private right of action exists. *See* Def.'s Mem., ECF No. 7-1 at 6 (citing *Hampton v. Utah Transit Auth.*, No. 2:16-cv-01282, 2017 WL 3972488, at *4-5 (D. Utah Sept. 7, 2017)). Caselaw supports WMATA's position and establishes that the FTA, formerly known as the Urban Mass Transportation ("UMT") Act, "does not create a private right of action, and none can be implied" based on the language in the statute. *Blue Bird Coach Lines, Inc. v. Linton*, 48 F. Supp. 2d 47, 48-49 (D.D.C. 1999); *Am. Bus Ass'n v. Rogoff*, 649 F.3d 734, 741 (D.C. Cir. 2011); *cf. A.B.C. Bus Lines, Inc. v. Urb. Mass Transp. Admin.*, 831 F.2d 360, 361 (1st Cir. 1987) ("Congress did not intend to create a private cause of action when it enacted the [UMT] Act."); *Razorback Cab of Ft. Smith, Inc. v. Flowers*, 122 F.3d 657, 659 (8th Cir. 1997) (per curiam) (holding that the language of the UMT Act "does not indicate any congressional intent to confer . . . a private right of action"). Instead, the FTA vests authority in the Secretary of Transportation to ensure compliance with the Act's nondiscrimination provisions and "explicitly limits any civil enforcement of [those] provision[s] to an action brought by the Attorney General." *Hampton*, 2017 WL 3972488, at *4-5; *see* 49 U.S.C. § 5332(c)-(e). Accordingly, the Court dismisses Mr. Pendergrass' claims under the FTA.

### D. Mr. Pendergrass' Breach of Contract and Tort Claims Based Directly on WMATA's CBC Policy Must Be Dismissed for Failure to State a Claim

Lastly, WMATA contends that "[t]o the extent" Mr. Pendergrass is asserting claims based on "rights secured by WMATA's [CBC P]olicy Instruction 7.2.3/2[,]" including contract and tort claims, these other claims based on the Policy itself must be dismissed "on the same grounds on which the Court dismissed [those] claim[s] in the 2018 Case[,]" Def.'s Mem., ECF No. 7-1 at 8 n.5; including for failure to state a claim and/or being barred by WMATA's immunity under the Eleventh Amendment, Def.'s Mot., ECF No. 7 at 2 ¶ 4. While Mr. Pendergrass' Complaint does not specifically assert a separate count alleging a violation of WMATA's CBC Policy, *id.*; the caption section of the Complaint states that he is requesting a remedy for the violation of his rights "secured by" the CBC Policy, *see* Compl., ECF No. 1 at 1; and his opposition appears to proffer breach of contract and tort claims, including negligence, based on WMATA's alleged failure to follow its "documented policy guidelines," which he contends should not be "shielded by sovereign immunity," *see* Pl.'s Resp., ECF No. 9 at 10-11.

The Court first concludes that Mr. Pendergrass has failed to state a breach of contract claim. Although section 80 of the WMATA Compact "waives WMATA's sovereign immunity for contractual disputes[,]" *Beebe*, 129 F.3d at 1289; "[t]o allege a breach of

contract claim, Mr. Pendergrass must first allege the existence
of a contract[,]" *Pendergrass*, 2018 WL 4938578, at *4; *see U.S.
Conf. of Mayors v. Great-West Life & Annuity Ins. Co.*, 327 F.
Supp. 3d 125, 129 (D.D.C. 2018) ("To prevail on a claim of
breach of contract, a party must establish (1) a valid contract
between the parties; (2) an obligation or duty arising out of
the contract; (3) breach of that duty; and (4) damages caused by
breach." (citation and internal quotation marks omitted)).
Although Mr. Pendergrass argues that the CBC Policy is a valid
"contract" between WMATA and himself as an applicant for
employment with the agency, Pl.'s Resp., ECF No. 9 at 10; as
this District Court determined in the 2018 Case, "he has not
sufficiently alleged that WMATA's enactment of the Policy
actually constitutes a contract between WMATA and its
applicants[,]" *Pendergrass*, 2018 WL 4938578, at *4. Under Mr.
Pendergrass' theory, "anyone who applies for a position with
WMATA would have a binding contract concerning the processing of
his application, and a job in the event of error." Mem. Op.,
*Martin v. WMATA*, No. 02-851 (RMC) (D.D.C. Sept. 16, 2004), ECF
No. 35 at 5-6. However, "[a]bsent violations of a collective-
bargaining agreement or statute, a plaintiff has no contractual
remedy against a *prospective* employer who retracts an offer
before employment begins." *Id.* at 6 (citations omitted). Since
Mr. Pendergrass has alleged no such facts, nor properly pled

facts establishing the basic elements of a contract claim, and because WMATA's hiring policies and procedures do not create "a contractual obligation towards applicants," *Pendergrass*, 2018 WL 4938578, at *4; nor "substantive rights for . . . candidates for employment at WMATA[,]" Def.'s Reply, ECF No. 11 at 7; the Court dismisses Mr. Pendergrass' breach of contract claims based on WMATA's CBC Policy, as this District Court did in the 2018 Case, *see Pendergrass*, 2018 WL 4938578, at *4.

The Court also concludes that Mr. Pendergrass has failed to state any tort claims, including ones based in negligence, in regard to his allegations that WMATA failed to follow its CBC guidelines for the hiring process and "negligently discarded" his individual assessment "in the trash." Pl.'s Resp., ECF No. 9 at 10-11. First, as WMATA notes, Mr. Pendergrass' Complaint does not plead sufficient allegations to establish the basic elements of a negligence claim. Def.'s Reply, ECF No. 11 at 6; *see Magee v. Am. Inst. of Certified Pub. Accts.*, 245 F. Supp. 3d 106, 111 (D.D.C. 2017) ("The elements of a negligence claim . . . are (1) duty, (2) breach, (3) causation, and (4) damages."). Second, even if Mr. Pendergrass had sufficiently pled any tort claims in the Complaint regarding WMATA's CBC Policy, they must be dismissed because WMATA's hiring policies and procedures "are 'governmental/discretionary decisions' that are immune from suit." *Pendergrass*, 2018 WL 4938578, at *4. The Court of Appeals

26

for the District of Columbia Circuit ("D.C. Circuit") has already considered the question of whether WMATA's employment practices are discretionary and has determined that "decisions concerning the hiring, training, and supervising of WMATA employees are discretionary in nature, and thus immune from judicial review." *Burkhart v. WMATA*, 112 F.3d 1207, 1217 (D.C. Cir. 1997); *see also Martin v. WMATA*, 273 F. Supp. 2d 114, 118 (D.D.C. 2003) ("WMATA is immune from tort claims arising from the hiring, firing, and supervision of its employees[.]"). Accordingly, the Court dismisses any tort claims based on WMATA's CBC Policy, as this District Court did in the 2018 Case, *see Pendergrass*, 2018 WL 4938578, at *4.

### E. Mr. Pendergrass' Claims Under the Federal Tort Claims Act Must Be Dismissed Because WMATA's Hiring Policies and Procedures Are a Discretionary "Governmental Function" Shielded by Sovereign Immunity

As in his 2018 Case, "[i]n his opposition, Mr. Pendergrass argues that he has made out a tort claim under the [FTCA,]" *id.* at *5; even though he raised no such claim or count in his Complaint, *compare* Pl.'s Resp., ECF No. 9 at 8-9, *with* Compl., ECF No. 1 at 20-24. WMATA responds that Mr. Pendergrass has not shown under the FTCA "that the CBC Policy is a policy that places WMATA's individualized assessment review processing decisions outside WMATA's immunity under the Compact." Def.'s Reply, ECF No. 11 at 5. The Court agrees.

Section 80 of the interstate compact states that WMATA is not "liable for any torts occurring in the performance of a governmental function." D.C. CODE ANN. § 9-1107.01(80). WMATA's "governmental" functions that are protected by this immunity are divided into two categories under the FTCA: (1) quintessential governmental activities, such as police activity, and (2) non-quintessential governmental activities that are "discretionary" in nature. *Burkhart*, 112 F.3d at 1216. The U.S. Supreme Court has defined a discretionary function as "one that involves choice or judgment" and is "based on considerations of public policy." *United States v. Gaubert*, 499 U.S. 315, 323, 325, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991). In determining whether a non-quintessential governmental activity is "discretionary," and therefore "shielded by sovereign immunity[,]" *Burkhart*, 112 F.3d at 1216; courts must first ask "whether any 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow[,]'" *Cope v. Scott*, 45 F.3d 445, 448 (D.C. Cir. 1995) (quoting *Gaubert*, 499 U.S. at 322). "If there is a prescribed course of action, sovereign immunity does not bar suits based on a failure to follow that course." *Pendergrass*, 2018 WL 4938578, at *5. If, however, the governing statutes, regulations, or policies "leave room for 'choice,' an exercise of such choice is exempt from suit under the FTCA if the decision is 'susceptible to policy judgment' and involve[d]

an exercise of 'political, social, [or] economic judgment.'" *Burkhart*, 112 F.3d at 1217 (quoting *Cope*, 45 F.3d at 448).

As discussed above, the D.C. Circuit has already concluded that WMATA's decisions regarding the hiring of its employees "are discretionary in nature," and are therefore shielded from judicial review. *Id.* This is the case because the hiring decisions of a public entity like WMATA "require consideration of numerous factors, including budgetary constraints, public perception, economic conditions, individual backgrounds, office diversity, experience and employer intuition." *Id.* (citation and internal quotation marks omitted). As WMATA explains, its CBC Policy is a "hiring standard" and therefore "a classic example of [the] exercise of its discretionary hiring authority" grounded in the agency's own "political, social, and economic considerations." Def.'s Reply, ECF No. 11 at 5. No federal statute, regulation, or policy specifically prescribes the "course of action" that WMATA must take in processing applicants' individualized assessment reviews, but instead the decisions of the Individualized Assessment Panel involve the exercise of "choice or judgment" and can thus be classified as discretionary decisions protected by WMATA's sovereign immunity. *Gaubert*, 499 U.S. at 322, 325; *see* Def.'s Reply, ECF No. 11 at 6. Therefore, the Court dismisses Mr. Pendergrass' opposition

claims that WMATA has violated the FTCA, as this District Court did in the 2018 Case, *see Pendergrass*, 2018 WL 4938578, at *5.

### V.    Conclusion

For the foregoing reasons, the Court **GRANTS** WMATA's Motion to Dismiss in Part, ECF No. 7. The Court thus dismisses all of Plaintiff's claims except for those arising under Title VII.[5] An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **September 6, 2023**

---

[5] In its reply, WMATA adds that "it should also be noted that Plaintiff's apparent complaints about [WMATA's] alleged failure to timely review his [individualized assessment] appeal are not of any import, even if the Court were to consider this information for purposes of the motion to dismiss." Def.'s Reply, ECF No. 11 at 7. The Court agrees, as Mr. Pendergrass does not plead "any facts showing he suffered any damage as a result[,]" *id.* at 8; nor does he proffer any timeliness arguments in relation to the FCHRA, DCHRA, FTA, or CBC Policy in his oppositional response, *see generally* Pl.'s Resp., ECF No. 9.